JUDGE FORREST

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

13 CIV 7617

------------------------------------------------------------------------X

ROBIN S. LOBEL,

                          Plaintiff,

                   vs.

PRIZM ASSOCIATES, INC. d/b/a ALL ACCESS
DENTAL, TRU-DENTAL, P.C. d/b/a ALL ACCESS
DENTAL, KARINA INTRIAGO GONZALEZ a.k.a.
Karina Intriago a.k.a. Karina Gonzalez, PATRICK
MASCARENHAS, DDS, DAVID GONZALEZ a.k.a,
Carlos Gonzalez, ENRICO ROMANO, and BRIAN
BERLANDI,

                          Defendants.

------------------------------------------------------------------------X

**COMPLAINT**

**Plaintiff Demands Trial by Jury**

OCT 28 2013

U.S.D.C. S.D. N.Y.
CASHIERS

ROBIN S. LOBEL, by her undersigned attorney, as and for her complaint, alleges

upon knowledge as to herself and upon information and belief as to all other matters as

follows:

     1.     This is an action to recover damages and other remedies for unlawful

retaliation in violation of the federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.*, the

New York State False Claims Act, N.Y. Finance Law §§ 187, *et seq.*, and the New York

State Whistleblower Law, N.Y. Labor Law § 740.

     2.     All Access Dental is a group of dental practices with a history of violating

healthcare laws. In fact, the New York State Medicaid Fraud Control Unit found that

defendant Patrick Mascarenhas, DDS, and his All Access Dental clinics violated

Medicaid rules and regulations for more than six years, resulting in hundreds of

thousands of dollars in losses to the New York State Medicaid program.

3.      As detailed below, defendant Mascarenhas and his All Access Dental clinics have now expanded their practices to even more locations in New York and Florida with the help of non-dentist business partners, defendants Karina Intriago Gonzalez and David Gonzalez. Together with the other named defendants, they have violated the federal and state False Claims Acts, and Article 177 of the New York Penal Law, by falsely submitting claims to government and private insurers under the names of certain dentists who were authorized to submit claims, when the services were actually provided by different dentists who were not authorized to submit those claims.

4.      In addition to fraudulent billing practices, the defendants have endangered public health and safety by using long-expired drugs, disinfectants and germicides, including in situations involving patients who were HIV-positive. Some of the drugs and germicides were being used two years after their expiration dates, while other supplies had expired as much as seven years earlier.

5.      The defendants' conduct has created a substantial and specific danger of transmission to patients and the general public of infection from tuberculosis (TB), the hepatitis B virus (HBV), the hepatitis C virus (HCV), other hydrophilic and lipophilic viruses, fungi, and drug-resistant bacteria including MRSA bacteria (methicillin-resistant staphylococcus aureus) and VRE bacteria (vancomycin-resistant enterococci).

6.      When plaintiff complained about these dangerous and illegal practices to defendant Karina Intriago Gonzalez, the Chairman and Chief Operating Officer of All Access Dental, and to other All Access Dental officers and supervisors, they responded by threatening her, destroying evidence, terminating her employment, and refusing to provide her COBRA benefits as required by federal law.

2

7.    Plaintiff seeks compensatory, special and punitive damages in amounts to be determined at trial, reinstatement to her prior position with full benefits, attorneys' fees, the costs of this action, and all other remedies and relief available under federal and state laws.

### Jurisdiction and Venue

8.    This Court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367, because the state law claims form part of the same case or controversy as the federal claims.

9.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because all parties are residents of the State of New York and the corporate defendants reside in this District, and pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to plaintiff's claims occurred in this District.

### The Parties

10.    Plaintiff ROBIN LOBEL is a resident of the State of New York. From October 29, 2012, until June 12, 2013, Ms. Lobel worked as the office manager of the defendants' All Access Dental clinic in Middletown, New York. She was also responsible for traveling to other All Access Dental offices owned and operated by the defendants throughout this District. She was at all relevant times an employee of the defendants as defined by New York Labor Law Section 740(1)(a).

11.    Defendant PRIZM ASSOCIATES, INC. d/b/a ALL ACCESS DENTAL ("Prizm") is and was at all relevant times a corporation organized under the laws of the State of New York, with a principal place of business at 1350 Broadway, Suite 2104,

New York, New York 10018. Defendant Prizm owns a trademark for the trade name "All Access Dental." Upon information and belief, defendant Prizm is owned and controlled by defendants Karina Intriago Gonzalez and David Gonzalez, who are not licensed dentists. Defendant Prizm was at all relevant times an employer as defined by New York Labor Law Section 740(1)(b).

12.     Defendant TRU-DENTAL P.C. d/b/a ALL ACCESS DENTAL ("True Dental") is and was at all relevant times a professional corporation organized under the laws of the State of New York, with a principal place of business at 1350 Broadway, Suite 2104, New York, New York 10018, the same office suite as defendant Prizm. Defendant Tru-Dental is owned and controlled by defendant Patrick Mascarenhas, DDS. Defendant Tru-Dental was at all relevant times an employer as defined by New York Labor Law Section 740(1)(b).

13.     Defendant KARINA INTRIAGO GONZALEZ, a.k.a Karina Intriago, a.k.a. Karina Gonzalez ("Mrs. Gonzalez") at all relevant times held herself out to the public as the Chairman and Chief Operating Officer of All Access Dental without identifying whether All Access Dental is a d/b/a of defendant Prizm, defendant Tru-Dental, or both. At all relevant times, defendant Mrs. Gonzalez was also the Chief Executive Officer of defendant Prizm. Upon information and belief, defendant Mrs. Gonzalez is a resident of the State of New York, is the spouse of defendant David Gonzalez a.k.a. Carlos Gonzalez, and together with her spouse owns and controls defendant Prizm.

14.     Defendant PATRICK MASCARENHAS ("Mascarenhas") is and was at all relevant times a dentist licensed by the University of the State of New York and the

4

owner of defendant Tru-Dental P.C. d/b/a All Access Dental.  Defendant Mascarenhas
owns at least one other dental practice, Delancey Dental, P.C., that also operates under
the d/b/a All Access Dental.

15.     Defendant DAVID GONZALEZ a.k.a Carlos Gonzalez ("Mr. Gonzalez")
at all relevant times held himself out to the public as the Chief Executive Officer of All
Access Dental without identifying whether All Access Dental is a d/b/a of defendant
Prizm, defendant Tru-Dental, or both.  Upon information and belief, defendant Mr.
Gonzalez is a resident of the State of New York, is the spouse of defendant Mrs.
Gonzalez, and together with his spouse owns and controls defendant Prizm.

16.     Defendant ENRICO ROMANO ("Romano") at all relevant times held
himself out to the public as Vice President of All Access Dental without identifying
whether All Access Dental is a d/b/a of defendant Prizm, defendant Tru-Dental, or both.
Upon information and belief, defendant Romano is a resident of the State of New York.

17.     Defendant BRIAN BERLANDI ("Berlandi") at all relevant times held
himself out as either a Vice President or General Counsel of All Access Dental without
identifying whether All Access Dental is a d/b/a of defendant Prizm, defendant Tru-
Dental, or both.  Upon information and belief, defendant Berlandi is a resident of the
State of New York.

18.     Ignoring corporate forms and formalities, the individual defendants use the
d/b/a designation "All Access Dental" at times to mean defendant Prizm, at other times to
mean defendant Tru-Dental, and at still other times to refer to multiple corporate entities
as it suits their personal needs and purposes.  Defendants are therefore referred to
collectively in this Complaint as "All Access Dental."

5

## Statement of Claims

19.     Plaintiff Robin Lobel was employed as the Office Manager of the All Access Dental clinic located at 75 Crystal Run Road in Middletown, New York.

20.     Plaintiff's job responsibilities included overseeing the daily operations of the practice. Plaintiff was also assigned to perform the same job functions at other All Access Dental clinics in the State of New York as needed.

21.     Although plaintiff was initially hired by defendant Prizm, the owner of the All Access Dental trademark, documents provided during the course of her employment referred to her employer as All Access Dental without identifying whether that entity was defendant Prizm, defendant Tru-Dental, or some other entity. For example, the All Access Dental compliance manual provided to plaintiff portrays All Access Dental as an independent entity and describes defendant Prizm as "its management company."

22.     Plaintiff first became suspicious of All Access Dental's business practices when she noticed that the company used multiple bank accounts with different corporate names and received phone calls from credit card companies questioning All Access Dental's use of multiple tax identification numbers.

23.     Plaintiff's suspicions turned into concerns when the Chairman and Chief Operating Officer of All Access Dental, defendant Mrs. Gonzalez, talked to plaintiff about a new dentist who needed to be credentialed with various health plans in the State of New York. Defendant Mrs. Gonzalez told plaintiff that, in the meantime, claims for work done by this new dentist would be submitted to Healthplex and other health plans under the name of defendant Mascarenhas, even though defendant Mascarenhas did not perform the work and had never seen the patients.

6

24. Healthplex administers government funded dental programs such as Medicaid, Medicare, Child Health Insurance Programs, and Family Health Insurance Programs.

25. Plaintiff reasonably believed that All Access Dental was submitting false and fraudulent claims to government health insurance plans.

26. Plaintiff told defendant Mr. Gonzalez, the Chief Executive Officer of All Access Dental, that these billing practices were illegal and had to stop. Defendant Mr. Gonzalez referred plaintiff to defendant Mrs. Gonzalez, the Chairman and Chief Operating Officer of All Access Dental.

27. Plaintiff told defendant Mrs. Gonzalez that these billing practices were illegal and had to stop. Defendant Mrs. Gonzalez unequivocally told plaintiff that All Access Dental would not change these billing practices.

28. Plaintiff was later given two handwritten lists showing how All Access Dental submitted claims to Healthplex and other health plans for dentists who did not have the credentials necessary to submit claims under their own names.

29. The lists indicated that claims for work performed by certain dentists were to be submitted under the name of defendant Mascarenhas, while claims for work performed by other dentists were to be submitted under the name of a different dentist, Dr. Rubinchik, even though defendant Mascarenhas and Dr. Rubinchik had not seen any of the patients or performed any of the procedures.

30. Plaintiff recognized the handwriting on the lists as that of Angela Reid, the Regional Manager for All Access Dental. The lists were issued over the names of Ms. Reid and defendant Enrico Romano, Vice President of All Access Dental.

7

31.     Billing fraud, however, turned out to be the least of the concerns at All Access Dental.  Plaintiff soon learned that, by putting corporate profits ahead of patient care, All Access Dental was jeopardizing the health and safety of its patients and the general public.

32.     On or about June 4, 2013, plaintiff conducted an inventory of supplies at the All Access Dental offices in Middletown, New York.  During this inventory, plaintiff found large volumes of drugs and supplies that were far beyond their expiration dates.  Use of these expired supplies presented a substantial and specific danger to public health and safety.

33.     For example, disinfecting surfaces in dental treatment rooms is critical to prevent the spread of life-threatening diseases and other serious infections.  Failure to disinfect surfaces after use by an infected patient may lead to transmission to dentists or patients of tuberculosis (TB), the hepatitis B virus (HBV), the hepatitis C virus (HCV), other hydrophilic and lipophilic viruses, fungi, and drug-resistant bacteria including MRSA bacteria (methicillin-resistant staphylococcus aureus) and VRE bacteria (vancomycin-resistant enterococci).

34.     In order to destroy the targeted microorganisms, dental practices must use an appropriate concentration of an effective germicide for an exposure time sufficient to achieve complete destruction of the pathogens before they infect people.  The concentration amounts and exposure times vary depending on the efficacy and potency of the particular germicide.

35.     Plaintiff was shocked to discover that All Access Dental was using bottles of CaviCide®, a surface disinfectant and germicide, that had expired 18 months earlier.

The instructions on CaviCide® bottles prescribe specific concentrations to be used to prevent the spread of TB, HBV, HCV, and MRSA and VRE bacteria without reaching levels that may prove toxic to humans. Its effectiveness, however, depends on its potency. One and one-half years after its expiration date, there is no assurance that it has retained full potency or efficacy at the usual concentrations. Using expired CaviCide®, therefore, creates a substantial and specific danger that deadly and infectious diseases will be transmitted to patients and the general public.

36. Plaintiff told Angela Reid, Regional Manager of All Access Dental, and Jesse South, an employee responsible for purchasing, about the expired CaviCide®. The initial response was that smaller spray bottles may have been past their expiration date, but that All Access Dental was refilling the smaller bottles with CaviCide® from gallon-sized jugs that were not expired. This assertion was not true.

37. Plaintiff found that the gallon jugs of CaviCide® that were being used to refill the smaller spray bottles had expired in April 2011 – more than two years earlier.

38. Plaintiff was also told that the expired supplies must have been left over from a practice that had been in the same space before All Access Dental acquired it. Plaintiff knew this assertion also was not true, because she had personally inspected the premises with Jesse South on November 3, 2012, and there were no supplies on the premises from the prior practice.

39. Plaintiff became especially concerned when she realized that the CaviCide® had expired before All Access Dental had opened the practice in Middletown.

40. Plaintiff had heard that the owners of All Access Dental – defendants Mascarenhas and Mr. and Mrs. Gonzalez – had made it a practice to buy large quantities

of supplies at wholesale and auctions to save money for the various All Access Dental offices throughout New York and Florida. Upon seeing the long-expired CaviCide® being used in the critical process of disinfecting the treatment rooms, plaintiff became very concerned that other supplies might also be expired.

41.     The results of plaintiff's broader inventory were shocking. Plaintiff discovered that All Access Dental was using Carbocaine® (mepivacaine), an anesthetic, that had expired more than a year earlier.

42.     As with any anesthetic, the dose administered must be carefully calculated depending on the area to be anesthetized, the number of neuronal segments to be blocked, the depth of anesthesia, the duration of anesthesia desired, individual tolerance, and the age and physical condition of the patient, among other factors. Using an expired anesthetic means the doctor is guessing at its effectiveness and dosage, with potentially serious consequences for patients.

43.     Plaintiff also discovered that the office's only EpiPen®, an epinephrine auto-injector needed to save someone's life when they are suffering from anaphylaxis shock, had expired almost a year earlier. In fact, plaintiff discovered that every single drug and supply in the office's emergency medical kit had either already expired or was about to expire within the next 60 days.

44.     The continued use of an expired EpiPen® and other emergency medical supplies was inexcusable because Healthplex had specifically identified these supplies as expired during an inspection of the All Access Dental offices in Middletown a month earlier. The Healthplex inspection also revealed that the office's sterilization machine

10

did not have adequate spore testing and the x-ray equipment had expired inspection stickers.

45. Angela Reid, the Regional Manager of All Access Dental, was aware of the results of the Healthplex inspection. Now, a month later, plaintiff discovered that All Access Dental had swept these problems under the rug and had taken no corrective action.

46. As plaintiff continued her inventory, she developed a long list of expired supplies, including sterile water for irrigation, absorbent points, impression compound, impression putty, sterile surgical blades, prophylactic paste, dry socket paste, implant cement, and crown prep cord. Some of these supplies had expired seven years earlier.

47. On June 5, 2013, plaintiff discussed her findings in person with Angela Reid, the Regional Manager of All Access Dental, at a company meeting in Hyde Park, New York. Plaintiff also showed Ms. Reid photos of the expired drugs and supplies on her cell phone. Ms. Reid told plaintiff to send her an email with a list of expired products.

48. On June 6, 2013, Plaintiff sent a detailed email to Ms. Reid with a copy to Enrico Romano, All Access Dental's Vice President. In her email, plaintiff listed all the expired drugs and supplies that she had already identified. She also indicated that she had not yet completed her inventory and would continue checking the expiration dates of drugs and supplies in other cabinets and areas in the practice.

49. On June 7, 2013, a Friday, Ms. Reid told plaintiff to be ready to meet and discuss the expired supplies at the Middletown office on the following Monday, June 10.

On Monday, Ms. Reid told plaintiff that the meeting would be held on Tuesday, June 11. No one showed up on Tuesday, June 11.

50.     Upon information and belief, during the period between June 7 and June 11, 2013, Ms. Reid discussed plaintiff's complaints about expired drugs and supplies with defendants Mrs. Gonzalez, Mr. Gonzalez, Dr. Mascarenhas, and Mr. Romano.

51.     On Wednesday, June 12, 2013, Ms. Reid came to the All Access Dental offices in Middletown with defendant Romano and asked to meet with plaintiff. Defendant Romano told plaintiff that her employment was terminated effective immediately.

52.     As plaintiff packed up her personal belongings, the defendants ganged up on plaintiff. They verbally abused and harassed her in an effort to get possession of the evidence she had of their illegal activities and to intimidate her into not reporting their illegal conduct to the authorities.

53.     Defendant Romano demanded that plaintiff turn over her personal cell phone so he could delete the photos she had taken of the expired drugs and supplies. Plaintiff refused. A little while later, however, defendant Romano gained access to plaintiff's phone and started deleting the photos of expired drugs and supplies. Defendant Romano also took the handwritten lists that plaintiff had been given showing which dentists were being billed out under other dentists' names for work that the billing dentist had never performed.

54.     Defendant Mrs. Gonzalez angrily yelled at plaintiff over the telephone. She called plaintiff "an animal" and accused plaintiff of trying to "ruin" her and All Access Dental.

12

55. Defendant Berlandi tried to intimidate plaintiff over the telephone by yelling at her, tauntingly calling her "a little girl," and threatening to sue her if she showed the photos of the expired drugs and supplies to anyone.

56. In a desperate effort to get plaintiff's evidence and intimidate her into not reporting their illegal activity, the defendants threatened to call the State Police and have plaintiff arrested and prosecuted for taking pictures of the expired supplies, which defendants claimed were company policy.

57. Even after plaintiff left the All Access Dental offices, the defendants continued to retaliate against her by refusing to send her the COBRA paperwork necessary to continue her health insurance. Plaintiff was forced to hire a lawyer and incur considerable expense to get the defendants to comply with their federal COBRA obligations. Even after she hired a lawyer, the defendants gave the lawyer a run-around, thereby increasing plaintiff's anxiety and legal fees.

### AS AND FOR A FIRST CLAIM FOR RELIEF AGAINST DEFENDANTS PRIZM, MRS. GONZALEZ, MR. GONZALEZ, MASCARENHAS AND TRU-DENTAL FOR RETALIATION IN VIOLATION OF THE FEDERAL FALSE CLAIMS ACT, 31 U.S.C. §§ 3729, et seq.

58. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 57 as if fully restated herein.

59. Plaintiff reasonably believed that defendants were violating the federal False Claims Act by submitting false and fraudulent claims to government healthcare programs.

60. Plaintiff engaged in efforts to stop one or more violations of the federal False Claims Act by challenging defendants' false and fraudulent claims to government

13

healthcare programs and by urging defendants to stop their false and fraudulent billing practices.

61.     Plaintiff's efforts to stop one or more violations of the federal False Claims Act constitute protected conduct under the Act.

62.     Plaintiff engaged in lawful acts in furtherance of an action under the federal False Claims Act, including by investigating and gathering evidence of defendants' false and fraudulent claims to government healthcare programs.

63.     Plaintiff's lawful acts in furtherance of a federal False Claims Act action constitute protected conduct under the Act.

64.     Defendants were aware of plaintiff's protected conduct.

65.     Defendants took adverse action against plaintiff, including terminating her employment and refusing to provide the federally required COBRA notice to continue her health insurance benefits, because plaintiff engaged in protected conduct.

66.     Plaintiff has suffered monetary and other injury as a result of defendants' retaliatory conduct.

## AS AND FOR A SECOND CLAIM FOR RELIEF AGAINST DEFENDANTS PRIZM, MRS. GONZALEZ, MR. GONZALEZ, MASCARENHAS AND TRU-DENTAL FOR RETALIATION IN VIOLATION OF THE NEW YORK STATE FALSE CLAIMS ACT, N.Y. Finance Law §§ 187, *et seq.*,

67.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 66 as if fully restated herein.

68.     Plaintiff reasonably believed that defendants were violating the New York State False Claims Act by submitting false and fraudulent claims to government healthcare programs.

14

69. Plaintiff engaged in lawful acts in furtherance of an action under the New York State False Claims Act, including by investigating and gathering evidence of defendants' false and fraudulent claims to government healthcare programs.

70. Plaintiff's lawful acts in furtherance of a New York State False Claims Act action constitute protected conduct under the Act.

71. Defendants were aware of plaintiff's protected conduct.

72. Defendants took adverse action against plaintiff, including terminating her employment and refusing to provide the federally required COBRA notice to continue her health insurance benefits, because plaintiff engaged in protected conduct.

73. Plaintiff has suffered monetary and other injury as a result of defendants' retaliatory conduct.

## AS AND FOR A THIRD CLAIM FOR RELIEF
## AGAINST DEFENDANTS PRIZM, MRS. GONZALEZ
## MR. GONZALEZ, MASCARENHAS AND TRU-DENTAL FOR
## RETALIATION IN VIOLATION OF THE NEW YORK
## WHISTLEBLOWER LAW, N.Y. Labor Law § 740

74. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 73 as if fully restated herein.

75. Defendants engaged in conduct that violates applicable laws, rules, and regulations, including 8 N.Y.C.R.R. § 29.2(a)(13), New York Education Law § 6530(47), and 29 C.F.R. § 1910.1030.

76. Defendants' violations of applicable laws, rules, and regulations created or presented a substantial and specific danger to the public health or safety.

77. Plaintiff disclosed the defendants' violations of applicable laws, rules, and regulations to a supervisor.

15

78.     Plaintiff threatened to disclose the defendants' violations of applicable

laws, rules, and regulations to a public body.

79.     Plaintiff objected to and refused to participate in the defendants' violations

of applicable laws, rules, and regulations.

80.     Defendants took retaliatory personnel action against plaintiff because of

her disclosures, threats to disclose, objections and/or refusals to participate in defendants'

violations of applicable laws, rules, and regulations.

81.     Plaintiff has suffered monetary and other injury as a result of defendants'

retaliatory conduct.

## AS AND FOR A FOURTH CLAIM FOR RELIEF AGAINST DEFENDANTS PRIZM, MRS. GONZALEZ, MR. GONZALEZ, MASCARENHAS AND TRU-DENTAL FOR RETALIATION IN VIOLATION OF THE NEW YORK WHISTLEBLOWER LAW, N.Y. Labor Law § 740

82.     Plaintiff repeats and realleges each and every allegation set forth in

paragraphs 1 through 81 as if fully restated herein.

83.     Defendants engaged in conduct that constitutes health care fraud as

defined by Article 177 of the New York Penal Law.

84.     Defendants Mr. and Mrs. Gonzalez and defendant Mascarenhas engaged

in the active management and control, in an executive capacity, of the affairs of

defendants Prizm and Tru-Dental, and acted for their personal benefit when submitting

and/or directing the submission of claims to health plans.

85.     Defendants Mr. and Mrs. Gonzalez, Prizm, Mascarenhas and Tru-Dental

committed health care fraud in violation of New York Penal Law Section 177.05, *et seq*.,

by knowingly and willfully providing materially false information or omitting material

16

information for the purpose of requesting payment from a health plan for a health care item or service with the intent to defraud a health plan and, as a result of such information or omission, defendants Prizm, Mascarenhas and/or Tru Dental received payment in an amount that they were not entitled to under the circumstances.

86.     From at least January 2013 through August 2013, defendants billed health plans under the name and billing numbers of defendant Mascarenhas for dental procedures that had actually been performed by other dentists.

87.     From at least January 2013 through August 2013, defendants billed health plans under the name and billing numbers of Dr. Rubinchik for dental procedures that had actually been performed by other dentists.

88.     Plaintiff disclosed the defendants' health care fraud to a supervisor.

89.     Plaintiff threatened to disclose the defendants' health care fraud to a public body.

90.     Plaintiff objected to the defendants' health care fraud.

91.     Defendants took retaliatory personnel action against plaintiff because of her disclosures, threats to disclose, and objections to defendants' health care fraud.

92.     Plaintiff has suffered monetary and other injury as a result of defendants' retaliatory conduct.

### AS AND FOR A FIFTH CLAIM FOR RELIEF
### AGAINST ALL DEFENDANTS FOR
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

93.     Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 92 as if fully restated herein.

17

94.    Defendants engaged in outrageous conduct towards plaintiff in violation of normal standards of decency.

95.    Defendants' conduct was without privilege or justification.

96.    Defendants' conduct was intentional and malicious.

97.    Defendants engaged in this conduct for the improper and illegal purposes of causing plaintiff to suffer humiliation, mental anguish, and extreme emotional and physical distress.

98.    As a result of defendants' conduct, plaintiff was placed in a state of fear and was forced to suffer severe physical and psychological abuse and agony.

99.    Defendants' conduct constitutes the intentional infliction of emotional distress and is actionable under New York law.

100.    Each defendant is jointly and severally liable for said conduct because they planned, engaged in, directed, ordered and/or ratified the outrageous conduct of each other.

## Jury Demand

101.    Plaintiff is entitled to and demands a jury trial.

## Prayer for Relief

WHEREFORE, plaintiff Robin S. Lobel demands judgment against all defendants, jointly and severally, for compensatory, special and punitive damages in amounts to be determined at trial, including without limitation two times the amount of back pay plus interest, reinstatement to her prior position with full benefits, reasonable attorneys' fees, the costs of this action, and such other and further relief as this Court

18

deems just and proper.

Dated: New York, New York
          October 28, 2013

JOHN HOWLEY, ESQ.

By: John J.P. Howley [JH 9764]
*Attorney for Plaintiff*
350 Fifth Avenue, 59th Floor
New York, New York  10118
(212) 601-2728
jhowley@johnhowleyesq.com